IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-02648-MSK-KMT

DARRELL BURTON, and
NORMAN MASSENGALE,

    Plaintiffs,

v.

VECTRUS SYSTEMS CORPORATION,
VECTRUS, INC., and
REBECCA WARDELL,

    Defendants.

---

**OPINION AND ORDER DENYING MOTION TO AMEND COMPLAINT AND GRANTING IN PART AND DENYING IN PART MOTION FOR REVIEW OF TAXED COSTS**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Amended Motion to Amend their Complaint **(# 76)**, the Defendants' (collectively, "Vectrus") response **(# 78)**, and the Plaintiffs' reply **(# 79)**; and the Plaintiffs' Motion for Review of Taxed Costs **(# 83)**, Vectrus' response **(# 84)**, and the Plaintiffs' reply **(# 85)**.

## FACTS

Only a cursory review of the proceedings to date is necessary to provide sufficient context, and the Court elaborates as necessary in its analysis. The Plaintiffs commenced this action alleging three claims, one claim under the Department of Defense whistleblower statute, 10 U.S.C. § 2409, and two common-law claims apparently asserted under Colorado law. The Plaintiffs invoked only this Court's Federal Question subject-matter jurisdiction under 28 U.S.C. § 1331, such that the Court's subject-matter jurisdiction over the common-law claims stemmed

1

from supplemental jurisdiction under 28 U.S.C. § 1367.  Vectrus moved to dismiss the Plaintiffs' federal claim due to failure to exhaust administrative remedies and further argued that, in the absence of any federal question, the Court should decline to exercise supplemental jurisdiction over the Plaintiffs' common-law claims.  In an Order **(# 72)** on June 26, 2019, the Court agreed with Vectrus, dismissing the federal claim as unexhausted and declining to exercise continuing jurisdiction over the common-law claims.  The Court entered Judgment **(# 73)** in favor of Vectrus on that same day, closing the case.

On July 3, 2019, the Plaintiffs filed the instant motion to amend **(# 76)**, explaining that although it was not adequately pled in their prior Amended Complaint, diversity of citizenship exists among the parties such that the Court would have original jurisdiction over the common-law claims pursuant to 28 U.S.C. § 1332.  Thus, the Plaintiffs sought leave to amend their complaint under Fed. R. Civ. P. 15 to cure the jurisdictional defect, thereby reviving the common-law claims.  Vectrus opposes **(# 78)** the motion, arguing that once judgment has entered, a request to reopen the case and modify pleadings must satisfy the more demanding standards of Fed. R. Civ. P. 59(e) or 60(b), and that the Plaintiffs fail to make an adequate showing under those rules.

Separately, the Plaintiffs also request that this Court review **(# 83)** the Clerk of the Court's taxation of $9,891.72 in costs against them, arguing that the Court should exercise its discretion to deny costs entirely because no fundamental change to the parties' positions occurred because of the Court's procedural dismissal and because the Clerk of the Court erred in taxing the travel costs of a witness deposition where the Plaintiff had requested that the deposition be conducted remotely via video.

## ANALYSIS

**A. Request to amend in a case where judgment has entered**

It is well-settled that "once judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Donelson v. United States*, 730 Fed.Appx. 597, 603 (10th Cir. 2018), *quoting The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1086-87 (10th Cir. 2005). As *Tool Box* explains, the liberal presumption favoring leave to amend during the life of a case "is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered," and the "liberality of Rule 15 no longer applies." 419 F.3d at 1087-88.

Although the Plaintiffs' motion to amend relies entirely on Rule 15 principles, the Plaintiffs' reply brief argues that they would also be entitled to relief under Rule 59(e), simply because their motion to amend was filed within 28 days of the Court's entry of judgment. But timeliness alone is not determinative of whether relief lies under Rule 59(e). Rather, a party seeking relief from a final judgment under that rule must show that there has been an intervening change in the controlling law, newly-discovered evidence that was previously unavailable, or that there is a need to correct a clear error or manifest injustice. *Burke v. Bigelow*, ___ Fed.Appx. ___, 2019 WL 5212884 (10th Cir. Oct. 10, 2019), *citing Servance of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The Plaintiffs' reply does not address these standards, much less attempt to show how any of them are met in these circumstances. Certainly, the Plaintiffs have not identified a change in the controlling law. Nor have they shown that the citizenship of the Defendants – allegations missing from the prior Amended Complaint – are "newly-discovered" evidence (as opposed to "newly-asserted") that was previously unavailable to them.

Although the final category, "the need to prevent manifest injustice" is broad and minimally-defined, the Court cannot assume that the Plaintiffs' failure to allege the alternative basis of diversity jurisdiction rises to such a level. As *Tool Box* suggests, one of the factors to be weighed in deciding whether to grant leave to reopen a judgment via an amendment to the pleadings is whether the party seeking to amend their pleadings had an opportunity to appreciate and correct the defective pleading. 419 F.3d at 1086-87 ("Courts have refused to allow a postjudgment amendment when, as here, the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave"). Here, Vectrus' November 2018 motion to dismiss specifically stated that "[t]he only basis Plaintiffs have alleged for the Court to have jurisdiction over [the common-law claims] is supplemental jurisdiction" and that the dismissal of the Plaintiffs' federal claim should result in the Court declining to exercise further jurisdiction over the common-law claims. *Docket* # 20 at 14. In response, the Plaintiffs appear to have simply ignored Vectrus' supplemental jurisdiction argument, assuring the Court that its original jurisdiction over the federal claim would suffice such that "the Court may assert supplemental jurisdiction over Plaintiffs' additional claims." *Docket* # 30 at 22. Thus, it is clear to the Court that the Plaintiffs had an opportunity to consider whether an additional basis of federal subject-matter jurisdiction might be warranted as early as November/December 2018, yet the Plaintiffs chose not to seek to amend their pleading at that time to assert the allegations they now urge.

The Court also notes that the Plaintiffs' argument concedes that there is little practical effect that would result from refusing to reopen the judgment. The Plaintiffs recognize that their common-law claims were dismissed without prejudice, such that they could "file an entirely new complaint based on Diversity" (although they contend that doing so would "be a waste of the

4

parties' and this Court's resources"). Because there is little practical injury to the Plaintiffs if their motion is denied, an argument that re-opening the judgment is necessary to prevent "manifest injustice" is further weakened. Accordingly, the Court cannot conclude that under Rule 59(e), leave to reopen the judgment is necessary to prevent manifest injustice.[1]

Because the Plaintiffs have failed to demonstrate that they are entitled to relief under Rule 59(e), their Motion to Amend is denied.

**B. Taxation of costs**

The Plaintiffs' motion regarding taxation of costs effectively raises two issues: (i) that the Court should decline to tax costs entirely against them; and (ii) if costs are to be taxed, the Clerk of the Court erred in taxing two specific items of costs.

1. Taxation of costs generally

Fed. R. Civ. P. 54 "creates a presumption that the district court will award costs to the prevailing party," and the non-prevailing party bears the burden of "overcom[ing] the presumption that these costs will be taxed." *Cohlima v. St. John Medical Center*, 693 F.3d 1269, 1288 (10th Cir. 2012). A party's indigence or the presentation of difficult issues are factors that

---

[1] In the interests of completeness, the Court has also independently considered whether the Plaintiffs would be entitled to re-open the judgment through Rule 60(b)(1), which allows a judgment or order to be reopened due to "mistake, inadvertence, surprise, or excusable neglect." The Plaintiffs' current motion makes a passing comment that "[t]here can be no doubt that Plaintiffs' counsel was remiss in not *also* pleading Diversity in the [Amended Complaint]." (Emphasis in original.) To the extent this skeletal reference is a contention that the Plaintiffs should be relieved of the consequences of counsel's error due to excusable neglect, the Court would reject it. The Plaintiffs have not explained how or why the error occurred, and thus, they have not tendered any excuse for the acknowledged neglect. Moreover, because the Plaintiffs were notified by Vectrus' Motion to Dismiss that no independent basis for subject matter jurisdiction existed over the common-law claims, the Plaintiffs cannot now show that they acted diligently to cure any pleading error that was brought to their attention. *See generally Doran Law Office v. Stonehouse Rentals, Inc.*, 678 Fed.Appx. 733, 736 (10th Cir. 2017) (listing excusable neglect factors).

the Court may weigh in exercising its discretion to award costs or not, but the denial of costs is "in the nature of a severe penalty" and the Court must identify an "apparent reason to penalize the prevailing party if costs are to be denied." *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1189 (10th Cir. 2004).

Here, as in *Whiting*, the Plaintiffs point to their indigence (although they make no factual showing to establish such indigence) and the close question of whether their federal claim warranted dismissal. But, as in *Whiting*, they offer no reason why the Court should penalize Vectrus by denying costs. Nothing in the record indicates that Vectrus has done anything during this litigation to warrant denial of costs that are otherwise generally awarded; if anything, as discussed below, Vectrus has demonstrated remarkable patience even as the Plaintiffs have struggled to assemble a lawsuit capable of sustaining itself.

The Plaintiffs argue that because they invoked a whistleblower statute, allowing costs to be imposed against them would be harmful to public policy as it would discourage whistleblowers from coming forward. Putting aside the question of whether the Plaintiffs are actually whistleblowers – a question as to the merits of this case that may be disputed by Vectrus and which this Court has not reached – the award of costs to Vectrus here is not based on the fact that the Plaintiffs are whistleblowers, but rather, on the fact that they failed to adequately plead their claims. To suggest that whistleblowers should be specifically relieved from the consequences of poor pleading constitutes an even more troubling articulation of public policy, one which this Court rejects.

The Plaintiffs also contend that Vectrus should not be awarded costs because they are not actually a "prevailing party" under Rule 54, because the Court's dismissal of their claims was simply procedural in nature and did not meaningfully alter the relative positions of the parties.

In *Allen v. Lang*, 738 Fed.Appx. 934, 944-45 (10th Cir. 2018), the court rejected an argument that dismissal of a plaintiff's common-law counterclaims due to a lack of supplemental jurisdiction constituted grounds to deny the defendant costs. The fact that the plaintiff might "prevail on his state claims in state court . . . is beside the point," as "the litigant in whose favor a judgment is rendered is," in general, "the prevailing party for purposes of Rule 54(d)." *Id.* Thus, the fact that the Plaintiffs' common-law claims were dismissed without prejudice does not prevent an award of costs against them. The Plaintiffs attempt to distinguish *Allen* by arguing that the dismissal of the federal claim there was a dismissal "on the merits" whereas here, the Court's dismissal of their federal claim was on procedural grounds. This argument misses the mark. The Court's dismissal of the Plaintiffs' federal claim here <u>was</u> an adjudication "on the merits," at least as to the merits of the claim as it existed at the time. The Court did not specifically find that it lacked subject-matter jurisdiction over the Plaintiffs' federal claim. *See Docket # 72* at n. 3 (explaining that it is not necessary to determine whether exhaustion of remedies is a jurisdictional requirement or whether "it simply provides an element of the claim that must be pled and proven"); *Miles v. State of California*, 320 F.3d 986, 988-89 (9th Cir. 2003) (stating that costs cannot be awarded where the underlying claim is dismissed for lack of subject-matter jurisdiction, but finding that a dismissal on Eleventh Amendment immunity "is not a dismissal for lack of subject matter jurisdiction"). That the Plaintiffs have now begun attempts to exhaust their administrative remedies with the Department of Defense in the hopes of eventually returning to court and (re-)asserting their federal claim would distinguish that future claim from the unexhausted one asserted and dismissed here. Unlike, say, cases where a dismissal is granted due to a failure to serve process, it is unambiguously clear that the Plaintiffs could not re-file their federal claim again based on the <u>same facts</u> as set forth in the Amended Complaint

7

(including the absence of facts concerning exhaustion) and obtain a different result. *Accord Miles*, 320 F.3d at 989 (plaintiff's claim having been dismissed without prejudice on immunity grounds, allowing him to pursue it in state court, did not preclude award of costs because "the dismissal eliminates the federal ADA claim from further proceedings in federal court and thus has changed the legal relationship of Miles with respect to the State").

In any event, to the extent that the Plaintiffs are correct and that the Court possesses the discretion to deny costs, this Court would nevertheless refuse to exercise that discretion here. An award of costs to Vectrus is entirely reasonable given the circumstances of this case. Vectrus contends that (and the Court can take judicial notice of the fact that) the Plaintiffs initially brought the same claims in a suit in federal court in Florida, but voluntarily dismissed it after Vectrus filed a motion to dismiss raising the same exhaustion arguments it presented here. The record in this case also indicates that Vectrus served a Motion for Sanctions on the Plaintiffs pursuant to Fed. R. Civ. P. 11 prior to filing their Motion to Dismiss, again advising the Plaintiffs of the possibility that their pleading was defective. This is not a case where a party is saddled with an award of costs based on a simple and obscure pleading mistake. This is a case where the Plaintiffs were given many advisements and opportunities to reconsider their legal arguments and strategies and refine them accordingly, yet they chose to proceed apace. In such circumstances, there is no reason to relive the Plaintiffs from the normal consequences of bringing a non-viable lawsuit. Moreover, although the Plaintiffs may be correct that <u>someday</u> they may be able to return to court to successfully assert the same claims presented here, the fact remains that <u>this time</u>, the Plaintiffs failed in their attempt. As such, an award of costs to Vectrus is entirely warranted.

Accordingly, the Court finds that the award of costs in favor of Vectrus was appropriate under Rule 54(d).

2. <u>Specific costs taxed</u>

The Plaintiffs challenge the substance of two rulings by the Clerk of the Court awarding costs to Vectrus. Both of those challenges relate to the Clerk awarding travel costs for Jennifer McPherson, a witness whom the Plaintiff noticed for deposition. The Clerk taxed $2,796.90 in airfare costs for Ms. McPherson, reflecting round-trip travel from her residence in Kuwait to Denver, and $203.69 in car rental costs for Ms. McPherson, reflecting 4 days' worth of a weekly rental charge.

28 U.S.C. § 1821(c)(1) provides for an award of travel costs reflecting "the actual expenses of travel." The Plaintiffs argue that these costs are bounded by a rule of necessity, such that if it was not "necessary" for Ms. McPherson to appear in person, her travel costs should not be taxed. The Plaintiffs contend that although they noticed Ms. McPherson for a deposition, they proposed to conduct that deposition via video so as to avoid having Ms. McPherson incur travel costs. (The Plaintiffs provide no evidentiary basis for this contention, although it does not appear to be disputed by Vectrus.) Nevertheless, for various reasons, including differences in time zones, it appears that the parties ultimately agreed to have Ms. McPherson travel to Denver instead.

As the party seeking an award of costs, Vectrus bears the initial burden of demonstrating that its claimed costs are reasonable. *Cohlmia*, 693 F.3d at 1288. Here, although the Court agrees generally that depositions taken by video can relieve the parties and witness of the time and expense that travel often requires, the Court cannot conclude that it was unreasonable for the Clerk to find that Ms. McPherson's travel to Denver for her deposition was an appropriately-

incurred cost. The difference in time zones between Denver and Kuwait imposes considerable burdens on one side or the other if a deposition is to be taken remotely from there. For Ms. McPherson to testify during regular business hours in Kuwait, counsel in the United States (including the court reporter, videographer, or other staff) would have to conduct the deposition from roughly 11:p.m. to 7:00 a.m. Denver time; for counsel in Denver to conduct the deposition during regular business hours, Ms. McPherson (and any videographer or other person assisting her on her end of the connection) would have to make herself available from 7:00 p.m. to 3:00 a.m. in her local time. Although it might have been possible for the parties to reach an agreement about the terms of a video deposition that effectively accommodated those concerns (*e.g.* by Ms. McPherson being deposed in three-hour chunks, from 6:00 p.m to 9:00 p.m. local time over three successive days or by the parties agreeing to a 5-hour deposition beginning at 7:00 a.m. in Denver, allowing Ms. McPherson to conclude by 10:00 p.m. Kuwait time), the record does not reflect anything about the parties' discussions about such arrangements. In the end, the record reflects that the Plaintiffs must have eventually agreed to depose Ms. McPherson in person in Denver, and they certainly enjoyed the benefit of conducting an in-person deposition, rather than a remote one. Thus, the Court cannot conclude that it was unreasonable for the Clerk of the Court to tax Ms. McPherson's travel costs. The Plaintiffs have not contended that the airfare taxed by the Clerk was unreasonable, and thus, the Court affirms the Clerk's taxation of this cost.

The Clerk also taxed a rental car expense incurred by Ms. McPherson. It appears that Ms. McPherson spent additional time in Denver visiting friends, and thus rented a car at a weekly rate. The Clerk of the Court converted that weekly rate to a daily one ($32.50 per day) and awarded Vectrus costs reflecting 4 days of rental car costs, finding that such costs were

"equivalent to taxicab fares between places of lodging and carrier terminals." The Plaintiffs complain that, at most, they should only be required to pay for one day's worth of car rental. The Court finds some small merit in the Plaintiffs' argument. This Court believes that, given the distance Ms. McPherson traveled, it is unreasonable to assume, as the Plaintiffs do, that she could arrive at the Denver airport, rent a car, travel to her deposition, be deposed, travel back to the airport, and prepare to return home all in one day. At the same time, it is not clear why the Clerk believed that four days were required for that same set of tasks. This Court finds a middle ground to be reasonable: that Ms. McPherson would arrive one day, be deposed for a full day the next, and return to the airport on the third day, making 3 days of car rental time appropriate. Accordingly, the Court grants in part the Plaintiffs' challenge to the Clerk's taxation of costs, reducing it by $32.50, reflecting the cost of one day's car rental.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Amended Motion to Amend **(# 76)** is **DENIED**. The Plaintiffs' Motion Seeking Review of Taxation of Costs **(# 83)** is **GRANTED IN PART AND DENIED IN PART**. The Court reduces the amount of costs taxed by the Clerk by the amount of $32.50, and **AFFIRMS** the taxation of $9,859.22 in costs against the Plaintiffs.

Dated this 10th day of February, 2020.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge